**In re Steven HARRIS and wife, Deborah Harris, Debtors.**

**Bankruptcy No. 89–62063.**

United States Bankruptcy Court, E.D. Texas, Tyler Division.

March 21, 1990.

William Sheehy, Wilson, Miller, Spivey, Sheehy & Knowles, Tyler, Tex., for movant/debtor/respondent Steven Harris.

Howard Britain, Tyler, Tex., for respondents/movants Victor A. King, William H. King & Ray King.

OPINION

DONALD R. SHARP, Bankruptcy Judge.

This matter came on for consideration of the Debtor's Emergency Motion for Valuation of Securities as well as Creditor's Motion to Lift the Automatic Stay. This Opinion constitutes findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052 and disposes of all the issues presented to this Court in both motions.

*Statement of Facts*

The basic facts of the case at hand are not in dispute. In 1985, Victor A. King, William H. King and Ray King, ("The Kings"), sold to Steven Harris, ("Debtor"), a business known as Carpenter Francis Pharmacy. The purchase price was $425,-000.00 of which $75,000.00 was paid as a down-payment. To secure the remaining $350,000.00 debt, the Kings took a valid security interest in SDH Enterprises, Inc., the reconstituted corporate entity of Carpenter Francis Pharmacy, Inc. It is undisputed that the Kings have possession of and hold a valid perfected security interest in all of the common stock of SDH Enterprises, Inc. In addition, Debtor gave a personal guarantee of the promissory note

given by SDH Enterprises, Inc., as part of the purchase price paid to the Kings to acquire from the Kings the corporate stock of Carpenter Francis Pharmacy. It is undisputed that the note is in default and that Debtor has paid neither principal nor interest since July, 1989, on said note.

The contentiousness of this matter results from Debtor's plans to retire the existing stock of SDH Enterprises, Inc., to the detriment of the Kings and to reissue new stock. This issue is compounded by the fact that the new stock is to be issued to Debtor's mother, Mildred Harris, for $10,000.00 consideration. The parties could not agree on whether this constituted a sale of the stock for the $10,000.00 or a capital contribution. However, the effect of retirement of the existing stock held as a security by the Kings would be to render the stock worthless and with it their security interest.

### Memorandum of Law

■ Valuation of the assets of reorganized debtors has long been a vexing problem for the courts. One commentator has described the procedure as "A guess compounded by an estimate." Coogan, *Confirmation of a Plan Under the Bankruptcy Code*, 32 Case W.Res.L.Rev. 301, 313 (1982).

At the hearing on the Motion for Valuation, the Court heard the testimony of two valuation experts. The first expert, Mr. Robert Bayles, testified for Debtor. Mr. Bayles' testified that the value of the common stock as it now exists is between $3,000.00 and $5,000.00. He reached this conclusion after examining the tax returns and financial statements of SDH Enterprises, Inc. He opined that it would take a gambler to buy the stock of this insolvent corporation and that any such gambler would be required to invest at least another $10,000.00 plus legal and accounting fees in attempting to make the corporation viable.

Mr. Bayles testified that in coming to his conclusions he analyzed the net worth of the corporation by employing five methods of valuation common to his practice. The first method considered was a net worth multiple formula. To quantify this one would multiply the net worth of the corporation times one and one-half. Mr. Bayles rejected this method because it implicitly quantifies goodwill which is hard to quantify with Chapter 11 debtors. The second method employed was described as multiplying the average net income of the corporation times a factor of seven. Using a five year average of net income Mr. Bayles arrived at an average net income of $15,611.00. Multiplying this average net income by a factor of seven resulted in a figure of $109,000.00 to which Mr. Bayles added $66,000.00 in outstanding receivables resulting in a total valuation of $175,000.00. However, Mr. Bayles indicated that he did not believe this was a good system and that he believed that this estimate was too low. The third method employed was to multiply the average of daily sales times 100. He testified that this method was commonly used. Mr. Bayles testified that he used a three year average of daily sales and a daily sales figure of $2,438.00. After multiplying this figure by a multiple of 100 and adding the $66,000.00 in receivables he arrived at a figure approximating $300,000.00. The fourth method employed was to divide annual revenue by a factor of three. This method resulted in a valuation of $293,645.00 to which the $66,000.00 in receivables were added resulting in a total worth of $350,000.00. The fifth method was to add the liquidated value of inventory, fixtures and annual income together. Using a figure of $157,000.00 for inventory, $9,000.00 for fixtures, and $5,343.00 for annual income, resulted in a net worth of $171,000.00 to which a $66,000.00 receivable was added resulting in a total net worth of $230,000.00.

Over all, Mr. Bayles testified that a figure of between $250,000.00 to $300,000.00 would be more reflective of the net worth of the corporation. When pressed for a more definite figure, Mr. Bayles responded that using a twenty percent capitalization rate, he believed a more reasonable estimate of the value of the corporation was $250,000.00 assuming that no debt existed.

On re-direct, Debtor's counsel, emphasized that this figure did not reflect a suit-

able discount given the increased strength of competition from discount pharmacies. He also prompted Mr. Bayles to recall that in addition to the debt owed to the Kings there existed an outstanding trade debt of $105,000.00 as well as secured debt of $60,000.00.

The expert testifying for the Kings was Mr. Dennis McGinnis. Mr. McGinnis qualified as an expert in that he had experience as a business broker and experience in appraisal. He testified that he looked at the assets and liabilities of SDH Enterprises, Inc. as well as the monthly reports, scheduled statement of affairs, tax returns, inventory, financial statements, plan of reorganization and disclosure statement. Mr. McGinnis analyzed the value of SDH Enterprises, Inc. using three methods; two of which he discounted. The first method discounted was the income approach. Mr. McGinnis testified that he did not believe that enough data existed to make a recommendation based on this approach. The second approach, was the market comparable approach. Again, Mr. McGinnis did not feel that there were enough comparable businesses to make a valuation estimate. However, Mr. McGinnis was able to make an estimate using the cost approach. The cost approach is simply a factor of the difference between the value of assets and the liabilities of the corporation. Removing the debt of the Kings resulted in a net worth of $135,507.50. Mr. McGinnis testified that this estimation took into account all debt. Assuming that there was no outstanding debt Mr. McGinnis would value the corporation at $281,407.00.

When charged with determining the allowed claim of a creditor secured by a lien on property the Court is charged with determining the value "In light of the purpose of the valuation and of the proposed disposition or use of such property." 11 U.S.C. § 506(a). The commentary in Collier on Bankruptcy suggests that assuming a successful organization the appropriate standard of value is "A value which takes into consideration not only the tangible value of the property but also the earnings to be derived therefrom. On the other hand, if prospects for a successful reorganization appear dim, the value may more

appropriately be determined on the basis of the value the holder of the secured claim could obtain for the property upon a disposition after the Debtor's retention and use has ended." 3 Collier on Bankruptcy 506.04, 506–28–29 (15th Ed.1989). However, the commentators in Colliers acknowledged that "In the usual instance in which the nature of the Debtor's prospects are not absolutely clear, the valuation should properly take all material possibilities into consideration and weigh their likelihood in arriving at a value. Thus, it is probably more appropriate to view the varying bases and manner of evaluation as establishing a range of possible values as opposed to a finite set of alternatives." 3 Collier on Bankruptcy 506.04, 506–29 (15th Ed.1989).

The Court is in agreement with the commentary in Colliers that varying bases and manner of evaluation should be entertained in arriving at a judicially mandated valuation. Having done so, the Court has found that in spite of the parties contentions, the estimates provided by the opposing experts were much more similar than dissimilar. Both parties gave ballpark figures of the corporation's worth assuming that the Kings' debt was excluded. Mr. Bayles testified that his estimates ranged from $250,000.00 to $300,000.00. The Court will assume a mid-point value of $275,000.00. The expert for the Kings, Mr. Dennis McGinnis, testified that excluding the Kings' debt, the worth of the corporation was $281,407.00. Subtracting the trade debt of $105,000.00 as well as the $60,000.00 in secured debt from both figures results in a low estimate of $110,000.00 (Debtors' expert) and a high valuation of $116,407.00 (Kings' expert).

Based on the testimony by the valuation experts the Court will accept the testimony of Mr. McGinnis as the more credible and hold that the stock of SDH Enterprises, Inc., has a value of $116,407.00, and that the Kings are fully secured to that extent.

### MOTION OF VICTOR A. KING, WILLIAM H. KING AND RAY KING TO LIFT STAY

■ 11 U.S.C. § 362 of the automatic stay once imposed by the filing of a Peti-

**592**

tion in Bankruptcy, can be lifted only upon a showing of cause or in the alternative, a showing that the Debtor does not have equity in the property and that such property is not necessary to an effective reorganization. In this respect, the Kings have moved for a lifting of the stay based on this second consideration.

It is undisputed by the parties that the Debtor does not have equity in the common stock of SDH Enterprises, Inc. The crucial issue for the determination of the Court is whether such property is necessary to an effective reorganization. The Court recognizes that ownership of the common stock is ownership of SDA Enterprises, Inc.

At the hearing, counsel for the Kings made several attempts to demonstrate that the common stock of SDH Enterprises, Inc., was not necessary to an effective reorganization of Debtor. To wit, there was testimony that Debtor could seek employment elsewhere. However, it is the opinion of the Court that there can be no conclusion other than that SDH Enterprises, Inc., is inextricably entwined with the affairs of the Debtor and thus necessary to an effective reorganization of the Debtor.

In testimony, Mr. King asserted that should he regain control of the stock of SDH Enterprises, Inc., and through it the right to hire and fire, he would terminate Mr. Harris' employment. While he asserted that Mr. Harris would be able to find suitable employment elsewhere he admitted that he was unaware of any similar pharmaceutical positions open in the Tyler, Texas area. Debtor testified that there were not currently available positions in the Tyler area.

Therefore, it is the conclusion of the Court that possession of the stock of SDH Enterprises, Inc., is necessary to the effective reorganization of Debtor and therefore the Motion to Lift Stay is DENIED.